IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AZANIAH BLANKUMSEE | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-19-0014 |
| RICKY FOXWELL, *Warden of ECI*, | * | |
| ANTOINETTE PERRY, *Captain at ECI*; | | |
| DAYANA CORCORAN, *Commissioner,* | * | |
| JOHN DOE, *Institutional ARP Coordinator*, | | |
| JOHN DOE, *Mail Room Supervisor*, | * | |
| OFC. JOHN MUNCEY *Facility Representative*, | | |
| JASON CLEM, M.D., *Medical Director at ECI,* | * | |
| ROBERT TROXWELL, *Dietary Manager at ECI,* | * | |
| Defendants[1] | * | |
| | *** | |

**MEMORANDUM OPINION AND ORDER**

Pending are Motions to Dismiss or, in the Alternative for Summary Judgment filed by Jason Clem. M.D. (ECF No. 19) and Ricky Foxwell, Dayena Corcoran, Captain Antoinette Perry, Officer John Muncey, and Robert Troxwell (collectively the "State Defendants"). (ECF No. 25). Plaintiff Azaniah Blankumsee has filed Responses in Opposition. (ECF Nos. 27, 28). A hearing is unnecessary to resolve the issues pending. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendants' Motions will be treated as a Motions for Summary Judgment and granted.

---

[1] Clerk shall amend the docket the docket to reflect the correct spelling of Officer Muncey and former Commissioner Corcoran's names. (ECF No. 25 at 4). Jason Clem, M.D, Medical Director at ECI, will be substituted for "John/Jane Doe, Medical Director at ECI." (ECF No. 1, ECF No. 19 at 1 n. 1).

**BACKGROUND**

Blankumsee, who is proceeding in this matter pro se, alleges in his verified Complaint, filed pursuant to 42 U.S.C. § 1983, that during the time he was incarcerated at Eastern Correctional Institution ("ECI"),[2] Defendants violated his constitutional rights by: (1) providing him a breakfast muffin on December 15, 2017, with alleged "mouse bites;" (2) keeping him on disciplinary segregation for 25 days longer than the 30 day sanction he received for a rule infraction because there was no room in the general population to move him; (3) retaliating against him for filing a § 1983 claim and "grievances;"[3] (4) providing inadequate mail facilities so that his mail has been lost, misplaced, withheld, destroyed, or improperly returned to the sender; (5) providing an "inadequate inmate grievance procedure;" (6) providing inadequate disciplinary proceedings; and (7) providing inadequate medical care and sick call process. (ECF No. 1 at 3–10).  Blankumsee seeks declaratory and injunctive relief in addition to $250,000 in compensatory damages and $300,000 in punitive damages. (*Id.* at 10–11).

**STANDARD OF REVIEW**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is

---

[2] Blankumsee is presently incarcerated at the Maryland Correctional Training Center.
[3] Blankumsee refers to documents he filed with the Complaint as a "grievances." (ECF No. 1 at 3; ECF No. 1-3 at 1–2, 27–42).  These documents are initial requests for an administrative remedy under the Division of Correction's Administrative Remedy Procedure ("ARP") process. The ARP is a request to the warden, whose decision may be appealed to the Commissioner of Correction; the decision of the Commissioner may be appealed via a grievance filed with the Inmate Grievance Office.  *See* Code of Maryland Regulations ("COMAR") 12.02.28.01 *et seq.*; Md. Code Ann., Corr. Servs., § 10-201 *et seq*.  *See infra* pp. 3-4.

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001). The substantive law governing the case determines what is material. *See Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A fact that is not of consequence to the case, or is not relevant in light of the governing law, is not material. *Id.* "In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Downing v. Balt. City Bd. of Sch. Comm'rs*, No. RDB 12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

There is no genuine dispute of material fact if the nonmoving party fails to make a sufficient showing on an essential element of his case as to which he would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). On issues for which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an affidavit that "set[s] out facts that would be admissible in evidence" or

3

other similar facts that could be "presented in a form that would be admissible in evidence" showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(2), (4).

## DISCUSSION

### Claims Against the State Defendants

The State Defendants argue that the claims against them should be dismissed or they are entitled to summary judgment on the grounds of lack of exhaustion of administrative remedies, failure to state a claim upon which relief may be granted, and failure to state a constitutional cause of action.

### Exhaustion of Administrative Remedies

The Prisoner Litigation Reform Act ("PLRA") provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). "[P]roper exhaustion" is required. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). A claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). The purpose of exhaustion is to: 1) allow a prison to address complaints about the program it administers before being subjected to suit; 2) reduce litigation to the extent complaints are satisfactorily resolved; and 3) prepare a useful record in the event of litigation. *Id.* at 199, 219.

An inmate housed at an institution operated by the Maryland Department of Public Safety and Correctional Services ("DPSCS") may avail himself of the administrative grievance process which is designed for "inmate complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01.01B(1)

4

(defining ARP). If an ARP is filed and denied, the prisoner may appeal the denial with 30 days to the Commissioner of Correction. If the Commissioner of Correction denies the appeal, the prisoner may file a grievance with the Inmate Grievance Office ("IGO") within 30 days. C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. The inmate must include in the grievance copies of the initial request for administrative remedy, the Warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. An order of dismissal constitutes the final decision of the Secretary of the DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii).

Although an inmate "must exhaust available remedies," he "need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. The *Ross* Court identified three instances when an administrative remedy is unavailable. First, an administrative procedure is unavailable when, despite what regulations or guidance materials may promise, it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

5

The State Defendants contend that Blankumsee did not administratively exhaust his claims through the IGO level, except for possibly his mail claim. (ECF No. 25 at 10). Blankumsee filed no grievances about conditions of confinement, health care, or disciplinary proceedings at Eastern Correctional Institution between December 2017 and December 2018. (Affidavit of F. Todd Taylor, Executive Director, Inmate Grievance Office, ECF No. 25-1 at 2-3 ¶¶ 2, 3, 6). Blankumsee filed a grievance on June 14, 2018, alleging that his mail was returned to sender without his knowledge. That grievance was dismissed for failure to exhaust institutional administrative remedies before filing the grievance. (*Id*. at 3 ¶ 5). Specifically, Blankumsee failed to appeal the decision to withhold mail to the managing official and then to the Executive Director, Field Support Services, as required by Section .05H(2)(b)(vi) of DOC's Inmate Mail – Mail Room Procedures policy, before he filed the IGO grievance. *See* OPS.250.0001 *Id.*; Mail Room Procedures ECF No. 25-1 at 13-14.

Blankumsee does not dispute his failure to exhaust administrative remedies. Rather, he contends in his opposition that "the grievance process is unavailable to prisoners on disciplinary segregation and admin segregation at ECI and correctional staff "will not provide necessary forms, nor will they sign them or send them out." (ECF No. 28 at 2 ¶¶ 2, 4.). These assertions, however, are unsupported by a declaration or other verified exhibits. Blankumsee also argues that the Commissioner of Correction Wayne Hill's response denying his appeal of the Warden's dismissal of ARP ECI 2355-18, "makes clear that the ARP process was not available" because that ARP Response provides "'No further action will be taken through the ARP process.'" (ECF No. 28 at 2 ¶ 6; ECF No. 25-7 at 6). On the same form, Commissioner Hill expressly notified Blankumsee that he "may appeal this response by following the procedure prescribed on the back

6

of the form." (ECF No. 25-7 at 6).[4] Thus, Blankumsee was informed that further appeal was available. Additionally, the many ARPs Blankumsee filed at ECI, including some filed during the time he was in disciplinary segregation, belie his assertion that unnamed correctional staff will not provide necessary forms or send them out. *See e.g.* ECF No. 1-3 at 1–2, 27–42; ECF No. 25-4 at 2–7; ECF No. 25-5 at 2–3; 27; ECF No. 25-7; at 2–8.

Blankumsee's conclusory and unsupported assertions are insufficient to demonstrate administrative remedies were unavailable to him. The Court finds that Blankumsee fails to show that he has exhausted his administrative remedies, and will grant the State Defendants' Motion for Summary Judgment. Moreover, even if Blankumsee had exhausted his mail claim, which he has not, his claim is unavailing.

---

[4] In that ARP, Blankumsee disputed the length of his term in disciplinary segregation. On September 26, 2018, Blankumsee pleaded guilty before a hearing officer to prison rule violations for possessing contraband and an unauthorized financial account and was sanctioned with 30 days of disciplinary segregation. (ECF No. 25-3.). In ARP ECI 2355-18, dated November 8, 2018, Blankumsee sought transfer out of disciplinary segregation because his 30-day sanction for a rule violation had expired on October 25, 2018, he was still in disciplinary segregation, and was told there was no cell available to accommodate his move. (ECF No. 25-7 at 3). The ARP was assigned to Lieutenant Stephen Elliott for investigation. Through that investigation Elliott determined that Blankumsee had filed an ARP request in disciplinary segregation that he did not feel safe, although he did not identify any individual whom he feared, and asked to be placed in administrative segregation after his disciplinary segregation sentence ended. (ECF No. 25-3 at 3 ¶ 4). Blankumsee was scheduled to come off disciplinary segregation on October 25, 2018, and was assigned to Housing Unit 5, Administrative Segregation on November 18, 2018, when a "safe bed space" became available. (ECF No. 25-7 at 4-5; Elliott Affidavit, ECF No. 25-3 at 3 ¶¶ 6, 7, 8, 10; ECF No. 25-4 at 6). "A temporary assignment to segregated confinement—thirty days or even six months, with reduced privileges, few out-of-cell activities or socialization opportunities, and heightened security measures—is not atypical or a significant hardship. *Gatewood v. Juknelis,* Civil Action No. ELH-16-1644, 2017 WL 1491361 *8 (April 26, 2017) (citing *Sandin v. Conner,* 515 U.S. 472, 485-86 (1995); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (finding six months under conditions dictated by administrative segregation policies was not atypical under *Sandin*)).

**Mail Claim**

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large, . . . incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228–29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). In considering whether a restriction is so related, courts examine (1) whether the regulation is related to a legitimate and neutral governmental objective; (2) whether there are alternatives that remain open to inmates to exercise the right; (3) the impact that accommodating the asserted right will have on guards and other prisoners, and on the allocation of prison resources; and (4) whether the existence of an easy and obvious alternative shows that the regulation is an exaggerated response by prison officials. *Turner v. Safley*, 482 U.S. 78, 89–90 (1987). Higher scrutiny is appropriate for incoming mail, as compared to outgoing mail. *See Thornburgh*, 490 U.S. 401, 413 (1989).

Blankumsee claims that mail he sent on one date did not reach his destination, mail sent on an unspecified date by his family was returned to them without notifying him, and he was not receiving postcards that lacked return addresses. (ECF No. 1 at 4-5). In response, mailroom staff informed him that once outgoing inmate mail is delivered to the mailroom, it is given to the United States Postal Service and the mailroom no longer has control over it, inmates are notified if incoming mail is withheld and must complete "the back side of the form" to indicate whether to destroy the mail or return it to sender, and that "postcards are returned/not accepted if there is no return address on them." (ECF No. 1-3 at 7, 9, 11, 13, 19; ECF No. 25-1 at 13–14 ).

Blankumsee claims the mailroom was not following its own rules and regulations (OPS 250.0001) because he was not notified of the postcards without return addresses or allowed to provide a return address for them before the postcards were destroyed. (ECF No. 1 at 5). Blankumsee contends these actions violated his First Amendment right to freedom of association. (ECF No. 1-3 at 4-6).[5] On June 14, 2018, Blankumsee filed a grievance with the IGO, alleging that his mail was returned to sender without his knowledge which was dismissed for failure to exhaust institutional remedies.[6]

The State Defendants argue there is a valid and rational connection between regulating inmate mail, such as requiring return addresses on all mail and limiting the types and content of mail that an inmate may receive, and the valid penological interests of maintaining safety, order, and security in the institution. *See Thornburgh*, 490 U.S. at 416 ("the broad discretion accorded prison wardens by the regulations here at issue is rationally related to security interests.").

---

[5] Blankumsee also alleges that on September 4, 2018, he sent 3 large envelopes containing legal mail with vouchers to deduct postage from his account. "At the time I had money in my account this will be the second time you've waited till the money was gone then failed to send my mail out." (ECF No. 1-7 at 21). Blankumsee does not allege in the Complaint that he missed any legal deadline or suffered other resultant injury, therefore he has failed to state a First Amendment claim for denial of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 351–53 (1996) (holding that to state a claim for a denial of access to the courts, a plaintiff must allege facts showing actual legal injury); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc) (requiring a prisoner claiming a denial of the right of access to the courts to make specific allegations and identify actual injury resulting from prison officials' conduct). There must be "actual injury" to "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *O'Dell v. Netherland,* 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis,* 518 U.S. at 355). Blankumsee's conclusory assertion in his opposition that he "missed court deadlines" fails to identify the deadline dates he allegedly missed. (ECF No. 28 at 4).

[6] On December 17, 2018, Blankumsee complained he was not receiving postcards with return addresses. The mailroom staff responded "We follow the OPS.250.0001 and only return mail that does not have a return address, correct inmate name, or DOC/SID #." (ECF No. 1-3 at 23).

"Correspondence regulation does not deprive prisoners of all means of expression." *Turner*, 482 U.S. at 92. Thus, even if Blankumsee did not receive all the postcards due to errors in the address or the mail's lack of compliance with institutional restrictions, he does not demonstrate a violation of his First Amendment rights. (ECF No. 1 at 5). Further, Defendants assert that lax mail room procedures are likely to lead to increased contraband or inappropriate communication. The record evidence also demonstrates that mailroom staff repeatedly insisted Blankumsee had received his mail, and it was withheld only when it did not comply with institutional policy.

### Inadequate Disciplinary Procedures

Blankumsee challenges his convictions for violating inmate rules as "inadequate disciplinary proceedings." (ECF No. 1 at 8-10). Blankumsee acknowledges that on September 25, 2018, he was charged with rule violations premised on a letter he wrote asking the recipient "about a pain medication to wit: suboxone strips and where he informed an individual to get a cash app and Western Union app" so that he can forward "'earned funds to her.'" (ECF No. 1 at 8; *see also* ECF No. 25-2 at 6). Blankumsee also admits that he was "written a rule violation form" on December 10, 2018. (ECF No. 1 at 9). He contends his rights were violated at the disciplinary hearing for several reasons including "trickery" by Defendant Muncey, the Facility Representative at the hearing, and delays. (*Id.*)

Blankumsee's claims are without merit because there is no genuine dispute of material fact that he pleaded guilty to both infractions. (ECF No. 25-2 at 11, possession of contraband and participating in or operating an unauthorized business, personal service, or enterprise; ECF No. 25-8 at 10, assault on an inmate). In the September 28, 2018, hearing, for the September 25, 2018, infraction, the hearing officer noted that "[t]he defendant indicated that he understood the

charge(s) and is pleading guilty voluntarily, admitted he is guilty of the charge(s), and is waiving his hearing rights." (ECF No. 25-2 at 11-12). In the January 3, 2019, hearing, for the December 10, 2018, infraction, the hearing officer noted that "[t]he Defendant was informed that by pleading guilty hearing rights and most appeal rights were waived and the Defendant was admitting to the rule violations" and that "the Defendant acknowledged that the guilty pleas was voluntarily made." (ECF No. 25-8 at 5). The State Defendants are therefore entitled to judgment.

Even if Blankumsee had not waived further challenges to the institutional disciplinary proceedings, the evidence shows he was afforded due process. To satisfy due process, a prison disciplinary proceeding must include: advanced written notice of the disciplinary charges; an opportunity to call witnesses and present evidence; and a written statement by the fact finder of the evidence relied upon and the reason for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). Blankumsee received an inmate rule violation form, was provided the opportunity to call witnesses at the hearing, and received a written statement from the hearing officer. (ECF No. 25-2; ECF No. 25-3). Blankumsee received all process to which he was due. Accordingly, the States Defendants' Motion for Summary Judgment will be granted.

### Claims Against Jason Clem, M.D

Blankumsee's claims against Jason Clem are based on allegations that: (1) Dr. Clem did not continue prescriptions for Ultram, Baclofen, and Neurontin for pain and medical treatments including: keeping a basin in his cell for epsom salt soaks for his chronic ingrown toe nails and hand braces for his carpal tunnel, previously prescribed for him by providers at other facilities; (2) Dr. Clem failed to consult medical records when diagnosing him; (3) other medical providers

11

failed to see him for sick call requests; and (4) the sick call process is inadequate. Blankumsee alleges he suffers pain from migraines, arthritis, ingrown toenails, previous leg fractures, and carpal tunnel, and claims he is unable to conduct activities of daily living because he is unable to stand or hold things. (ECF No. 1 at 6-11). He claims that Dr. Clem, who has never provided any alternative treatment such as medication, foot soaks, or medical footwear, has shown deliberate indifference by neglecting his medical needs. (*Id.* at 7).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendant or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively viewed, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To meet the objective requirement, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified

access to health care). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer,* 511 U.S. at 844.

The reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton,* 157 F.3d 574, 577 (8th Cir. 1998)). While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta v. Johnson*, 708 F.3d 520, 525–26 (4th Cir. 2013). Mere disagreement between the inmate and medical provider does not establish an Eighth Amendment violation absent exceptional circumstances. *See Estelle*, 429 U.S. at 106 (allegations sufficient to support medical malpractice alone do not

support a cognizable § 1983 claim); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.").

Dr. Clem attests that he has never personally provided medical services or treatment to Blankumsee during the times relevant here. (Affidavit of Jason Clem, M.D. ECF No. 19-5 at 2 ¶ 6).[7] Blankumsee offers no verified evidence to refute this assertion. Clem denies there is a policy at ECI to "refuse to follow an inmate's previous medical treatment plan issued by his previous health providers." (*Id*. at 2 ¶ 7). Clem states "health providers are expected to use their own independent professional medical judgment when conducting medical exams, diagnosing, and treatment inmates. *Id.* He explains medical providers are "expected to review a patient's previous medical history but are only guided by previous treatment plans." This is because a patient's medical condition may change over time." *Id*.[8] Further, Clem denies that Blankumsee's medical records were not consulted when he is provided medical care. "Even a cursory glance at his medical records indicates that his providers and mid-level providers are reviewing [Blankumsee's] medical record when diagnosing and treating [him]." (*Id*. at 4 ¶ 16)

When Blankumsee arrived at ECI on October 5, 2017, he had orders for wrist braces, a boot brace, and special shoes. He had mental health prescriptions for Benadryl and Risperdal. He had no active medical prescriptions, and there was no mention of an active order for a foot basin and epsom salts. Contrary to Blankumsee's allegations, his ECI health providers did not discontinue his Neurontin or Tramadol. Those medications were discontinued by his providers

---

[7]   Dr. Clem may have reviewed medical charts generated by nurses on two occasions. (ECF No. 19-4 at 12-13, 55-56).
[8]   The medical records show other health practitioners provided care to Blankumsee. (ECF No. 19-4). None are named as defendants in the Complaint.

prior to his transfer to ECI.  Baclofen, a muscle spasm reliever has not been prescribed for Blankumsee for at least the last three years.  Blankumsee does not complain of muscle spasms so Baclofen was not medically indicated.  (*Id*. at 2 ¶¶ 8, 9).

ECI medical providers have ordered a brace for Blankumsee's left hand.  They have determined that there is no clinically demonstrated need for Blankumsee to use a right hand brace.  In July 2018, Blankumsee was ordered a left ankle brace.  Blankumsee submitted no sick call slips complaining of migraines during the times relevant here (October 5, 2017 through December 31, 2018). (*Id*. at 4 ¶¶ 14, 15).  Dr. Clem states there is no medical evidence that Blankumsee is unable to stand, hold items or independently perform activities of daily living. (*Id*. at 4-6 ¶ 19).  In regard to Blankumsee's concern that he is being denied surgery for his carpal tunnel condition, he has been examined and advised that his condition may not require surgery.  Should his condition change, he will be reevaluated.  (*Id*. at 6 ¶20).

Regarding Blankumsee's allegations that he is unable to obtain a medical examination on request and the sick call process is inadequate, Dr. Clem explains that medical visits are triggered by the sick call process.  During the period at issue here, nursing staff or other medical providers responded to each of his sick call requests that raised medical concerns.  Inmates are not assigned a specific primary care provider.  Medical providers rotate and treat inmates as assigned in response to sick call slips or scheduled care (as in the chronic care clinic).  Dr. Clem explains the system does not allow inmates to select preferred providers.  Sick call slips are triaged by registered nurses who assign the inmate to the appropriate level of medical provider. Correctional staff have no input in assigning routine health care responses, but inmates are encouraged to ask correctional officers to assist notifying providers if an inmate needs

emergency medical care. (*Id*. at 5 ¶¶ 17, 19).

Dr. Clem denies there is a policy at ECI to "refuse to follow an inmate's previous medical treatment plan issued by his previous health providers." (ECF No. 19-5 at 2 ¶ 7). Dr. Clem states "health providers are expected to use their own independent professional medical judgment when conducting medical exams, diagnosing, and treatment inmates." *Id*. He explains medical providers are "expected to review a patient's previous medical history but are only guided by previous treatment plans."[9] This is because a patient's medical condition may change over time. (*Id*.).

Dr. Clem denies Blankumsee's assertion that ECI medical providers discontinued his prescriptions for Neurontin and Tramadol. These medications were discontinued by health providers prior Blankumsee's transfer to ECI. (*Id*. at 2 ¶ 9). Dr. Clem states Blankumsee has not been prescribed Baclofen, a muscle spasm relaxer for at least three years. Blankumsee does not complain of muscle spasms so that Baclofen is not medically indicated. (*Id*. at 2 ¶ 8).

Section 1983 requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), rev'd on other grounds, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (in order for an individual defendant to be held liable pursuant to § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights") (quoting *Bennett v. Gravelle,* 323 F. Supp. 203, 214 (D. Md. 1971), aff'd, 451

---

[9]     The medical records show other health practitioners provided care to Blankumsee. They are not named as defendants in this action.

16

F.2d 1011 (4th Cir. 1971)). An individual cannot be held liable under § 1983 under a theory of respondeat superior.[10] *See Monell,* 436 U.S. at 690; *Love–Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Thus, to establish § 1983 liability, a plaintiff must show that a defendant was personally involved in the alleged deprivation of his constitutional rights, *Vinnedge*, 550 F.2d at 928–29, or establish the defendant's liability as a supervisor, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (supervisory liability may attach if (1) the defendant had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive risk of a constitutional injury; (2) the defendant's response to that knowledge was so inadequate as to show deliberate inference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between defendant's inaction and the alleged constitutional injury). Blankumsee does not assert, nor does the record evidence suggest, grounds to hold Dr. Clem liable based solely on his supervisory role.

Viewed in the light most favorable to Blankumsee, he fails to set forth any facts to support a finding that Dr. Clem personally was involved in his medical care or that he acted with deliberate indifference to his serious medical needs. An Eighth Amendment claim has therefore not been established, and in the absence of a genuine issue of material fact in dispute, Dr. Clem's Motion for Summary Judgment will be granted. To the extent Blankumsee may have state law claims for negligence or medical malpractice, they are dismissed without prejudice.[11]

---

[10]   Respondeat superior is a legal doctrine which holds that in some circumstances an employer is responsible for the actions of employees performed within the course of their employment.

[11]   Absent federal question jurisdiction, there is no indication that diversity jurisdiction

## CONCLUSION

For these reasons, any state claims against Dr. Clem are dismissed without prejudice and Dr. Clem's and the State Defendants' Motions to Dismiss or, in the Alternative for Summary Judgment, construed as a Motions for Summary Judgment, ARE GRANTED.

## ORDER

For reasons stated in the foregoing Memorandum Opinion, it is this 4th day of August, 2020, by the United States District Court for the District of Maryland, hereby ordered:

1. The Clerk SHALL AMEND the docket as set forth in the Memorandum Opinion at footnote 1;

2. The state claims against Dr. Clem ARE DISMISSED without prejudice;

3. Dr. Clem's Motion to Dismiss or, in the Alternative for Summary Judgment (ECF No. 19), construed as a Motion for Summary Judgment, IS GRANTED;

4. The State Defendants' Motion to Dismiss or, in the Alternative for Summary Judgment, construed as a Motion for Summary Judgment (ECF No. 25), IS GRANTED;

5. The Clerk SHALL SEND a copy of this Order to Plaintiff and to counsel of record; and

6. The Clerk SHALL CLOSE this case.

      /S/
Paul W. Grimm
United States District Judge

---

exists under 28 U.S.C. § 1332. "When, as here, the federal claim is dismissed early in the case, federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction." *Carnegie Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966).